Merrimack
No. 89-117

JACQUELINE CUTTER AND RICHARD CUTTER

v.

MAINE BONDING & CASUALTY COMPANY

August 27, 1990

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* and *Gilbert Upton* on the brief, and *Mr. Hilliard* orally), for the plaintiffs.

*Wiggin & Nourie*, of Manchester (*Gordon A. Rehnborg, Jr.*, and *Doreen F. Connor* on the brief, and *Ms. Connor* orally), for the defendant.

THAYER, J.   This appeal by the defendant from an order of summary judgment questions whether the Superior Court (*Mayland H. Morse, Jr.*, Esq., Master; *Dunn*, J.) correctly found plaintiff, Jacqueline Cutter, entitled to underinsured motorist benefits under an insurance policy issued to her employer, Ransco, Inc., by the defendant, Maine Bonding & Casualty Company (MBCC). MBCC claims on

appeal that the trial court erroneously concluded that Ms. Cutter was a person insured for the purposes of underinsured motorist coverage because she was a "member of the corporate 'family' engaged in employment by Ransco Inc." For the reasons that follow, we reverse and remand.

MBCC issued a commercial automobile policy to Ransco, Inc., effective August 15, 1984, through August 15, 1985. On January 25, 1985, Ms. Cutter was involved in an accident while operating her 1980 Cadillac El Dorado in the course of her employment. Allegedly, this automobile accident was caused by one Donald Whitney, whose liability coverage of $100,000 was insufficient to compensate Ms. Cutter for the damages she suffered as a result of this accident. Consequently, Ms. Cutter sought underinsured motorist benefits under the commercial auto policy issued to her employer.

Since the plaintiff served Ransco, Inc. as vice-president, secretary and bookkeeper, and was engaged in its business pursuits at the time of the accident, she asserted that she was reasonable in expecting that Ransco's uninsured motorist protection would cover her injuries. Plaintiff thus filed a petition for declaratory judgment in the superior court demanding coverage under Ransco's commercial auto policy. MBCC refused to provide coverage claiming that plaintiff was operating a personally owned automobile, which was not insured by Ransco's policy. To that end, MBCC filed a motion for summary judgment.

In approving a Master's (*Mayland H. Morse, Jr.*, Esq.) recommended denial of the defendant's summary judgment motion, the Superior Court (*Manias*, J.) noted that "the plaintiff may be fairly construed to be a member of the corporate 'family' engaged in employment by Ransco, Inc. the named insured, therefore, fitting within the scope of an insured under the definition contained in the uninsured motorist policy. . . ." The court also found that it was reasonable to expect that the plaintiff, as an officer using her own car in the course of her employment, would receive coverage under Ransco's liability policy, "particularly in light of the section of the declarations page which refers to 'Non-owned Autos Only' reciting '[t]his includes autos owned by your employees or members of their households but only while used in your business or your personal affairs.'"

After the court's order on the defendant's motion, plaintiff followed suit and filed her own motion for summary judgment. The Court (*Dunn*, J.) approved the master's recommendation and

granted the plaintiff's motion, ruling that the reasonable expectation of the plaintiff, as an insured under this policy, was that coverage extended to her under the undisputed facts as presented. In its order, the court characterized the insurance policy as "at best confusing and fraught with ambiguity." The defendant's appeal ensued.

■ Whether the policy covers the plaintiff turns on a reading of the entire policy. We will construe any ambiguity in favor of the insured. *Trombly v. Blue Cross/Blue Shield*, 120 N.H. 764, 771–72, 423 A.2d 980, 984–85 (1980); *Commercial Union Assurance Cos. v. Gollan*, 118 N.H. 744, 747, 394 A.2d 839, 841 (1978). Therefore, only if it can reasonably be said on a reading of the entire policy that the uninsured motorist protection would be provided to plaintiff is MBCC obligated to cover plaintiff's injuries. *See Trombly*, 120 N.H. at 768–69, 423 A.2d at 983.

The underinsured motorist coverage at issue in this case requires MBCC to pay all sums that the "insured" is legally entitled to recover as damages from the owner or driver of the underinsured motor vehicle. Thus, Ms. Cutter would be entitled to recover her damages from the accident, caused by the underinsured Whitney, if and only if she qualifies as an "insured" under this policy. To answer the question "WHO IS INSURED," we look to the terms of the policy.

An insured, under part D of the uninsured motorist policy, is defined as follows.

"D. WHO IS INSURED

    1. *You*, any *family member* or a private chauffeur or domestic servant, while engaged in employment by *you* or *your* spouse.

    2. Anyone else *occupying* a covered *auto* or a temporary substitute for a covered *auto*. The covered *auto* must be out of service because of its breakdown, repair, servicing, loss or destruction.

    3. Anyone for damages he is entitled to recover because of *bodily injury* sustained by another *insured*."

(Emphasis in the original.)

At the outset we dispose of section 3, as it appears inapplicable on its face and no one has argued otherwise. Therefore, if Ms. Cutter is to qualify as an "insured", the prerequisite to underinsured motorist coverage, she must do so by falling within one of the first two definitional sections.

■    The first term in section 1 is "you". This term is separately defined in the policy as "the person or organization shown as the named insured in ITEM ONE of the declarations." The "named insured" in item 1 of the declarations page is Ransco, Inc. Therefore, Ms. Cutter does not qualify as a person insured insofar as she is not the "you" referred to in section 1. Neither is Ms. Cutter a private chauffeur or domestic servant. Ms. Cutter, as mentioned earlier, was employed as the vice-president, secretary and bookkeeper of Ransco, Inc.

The third possibility under section 1 would arise if Ms. Cutter is a "family member" of the named insured. A "family member" is defined as "a person related to *you* by blood, marriage or adoption who is a resident of *your* household, including a ward or foster child." It was this provision that the trial court found applicable when it ruled that "the plaintiff may be fairly construed to be a member of the corporate 'family'. . . ." After a review of the contract and relevant law from other jurisdictions, we disagree with the trial court and hold that Ms. Cutter was not a member of Ransco's "family" and was not, therefore, a person insured for the purposes of underinsured motorist coverage.

■■    We have never addressed or interpreted the "family member" term of the person insured definition where the named insured is a corporate entity. We have, however, long recognized the corporate entity as an artificial body and a person only in a fictitious sense. "A corporation is a jural person, but not a person in fact. It is an artificial creature, acting only through its agents." *State v. Luv Pharmacy, Inc.*, 118 N.H. 398, 404, 388 A.2d 190, 194 (1978). We cannot hold that Ms. Cutter is related to Ransco, Inc. by blood, marriage or adoption; to do so would contravene the definitions normally associated with the terms "blood," "adoption" and "marriage" and run counter to the principle that corporations are artificial.

In support of this position, we look to other jurisdictions and find that a clear majority of our sister States which have considered this issue have rejected the argument that employees qualify as "family members" of the corporations for which they work. *See, e.g., Pearcy v. Travelers Indemnity Co.*, 429 So.2d 1298, 1298 (Fla. Dist. Ct. App. 1983); *Hogan v. Mayor &c. of Savannah*, 171 Ga. App. 671, 672, 320 S.E.2d 555, 557 (1984); *Sears v. Wilson*, 10 Kan. App. 2d 494, 497, 704 P.2d 389, 392 (1985); *Kaysen v. Federal Ins. Co.*, 268 N.W.2d 920, 923–24 (Minn. 1978); *Giambri v. Government Employees Insurance Co.*, 170 N.J. Super. 140, 143, 405 A.2d 872, 874 (1979); *Buckner v.*

*MVAIC,* 66 N.Y.2d 211, 214, 486 N.E.2d 810, 812 (1985); *Dixon v. Gunter,* 636 S.W.2d 437, 440–41 (Tenn. Ct. App. 1982); *General Ins. v. Icelandic Builders,* 24 Wash. App. 656, 659–60, 604 P.2d 966, 967–68 (1979); *see also Testone v. Allstate Ins. Co.,* 165 Conn. 126, 129–30, 328 A.2d 686, 689 (1973); *Polzin v. Phoenix of Hartford Ins. Cos.,* 5 Ill. App. 3d 84, 88, 283 N.E.2d 324, 327–28 (1972); *Insurance Company of North America v. Perry Adm'r,* 204 Va. 833, 836, 134 S.E.2d 418, 420 (1964). *Contra King v. Nationwide Ins. Co.,* 35 Ohio St. 3d 208, 212–13, 519 N.E.2d 1380, 1384–85 (1988). In circumstances where an automobile insurance policy has been issued to a corporate entity, most of these courts have held that underinsured motorist benefits are available only if the plaintiff seeking the benefits qualifies under another section of the person insured definition. The family member section has been construed to be either superfluous or null and void when the named insured is a corporate entity and not an individual. *See Buckner supra; Pearcy supra.* We agree with the majority of jurisdictions and similarly find it untenable to say that a corporation could suffer bodily injury, have a spouse, relative, or household. Accordingly, we hold that Ms. Cutter is not a person insured under section 1.

█ Neither is Ms. Cutter a person insured under section 2 of the "WHO IS INSURED" definitions. To qualify there, an individual must occupy a "covered auto" or a "temporary substitute for a covered auto." A "covered auto" for underinsured motorist coverage is set forth in item two of the declarations. Item two states that covered autos for underinsured motorist coverage are those automobiles designated under symbol 6. The symbol 6 autos are defined as "OWNED AUTOS SUBJECT TO COMPULSORY UNINSURED MOTORIST LOSS." Ransco, Inc. did not own the 1980 Cadillac, it belonged to Ms. Cutter; thus, Ms. Cutter was not occupying a "covered auto" on the day of the accident. Ms. Cutter conceded that her car was not a "temporary substitute for a covered auto" when she stated, in her answer to defendant's interrogatories, that all of Ransco's covered autos were in "good operating condition" and "in use" at various job sites on the day of the accident. Ms. Cutter could not, therefore, qualify as an "insured" under section 2.

The plaintiff further argued that the policy as a whole supported her contention that she is entitled to underinsured motorist coverage. Arguing that Ransco's liability coverage extended to "any auto," including hers, and that a premium was paid for non-owned autos, Ms. Cutter claims that the statute required underinsured mo-

torist coverage with respect to the non-owned autos and that she was reasonable in expecting such coverage. Our reading of the policy does not support the view that there was liability coverage for Ms. Cutter's auto.

The liability coverage afforded to negligent employees operating non-owned automobiles was purchased to protect Ransco against any potential liability from a suit in which a plaintiff alleged *respondeat superior* as a theory of recovery. Furthermore, liability coverage is still contingent upon qualifying as a person insured. As with the underinsured motorist coverage, we find that Ms. Cutter quite clearly fails to meet the definitional requirements set out for liability coverage.

A person insured for liability coverage is defined as follows:

"1. *You, your* executives and partners are *insureds*. However, executives or partners are *not insureds* for their own autos.

2. Anyone else is an *insured* while using with *your* permission a covered *auto you* own, hire or borrow except:

   a. The owner of a covered *auto you* hire or borrow from one of your employees or a member of his or her household.

   b. Someone using a covered *auto* while he or she is working in a business of selling, servicing, repairing or parking *autos* unless that business is *yours*.

   c. Anyone other than *your* employees, a lessee or borrower or any of their employees, while moving property to or from a covered *auto*.

3. Anyone liable for the conduct of an *insured* described above is an *insured* but only to the extent of that liability. However, the owner or anyone else from whom *you* hire or borrow a covered *auto* is an *insured* only if that auto is a *trailer* connected to a covered *auto you* own."

Ms. Cutter fails to qualify under section one because the term "you" is defined as the named insured, Ransco. Even if we assume, *arguendo,* that Ms. Cutter is an executive, she is still excluded because she was operating her own auto.

■ Under section two, a person is an insured while operating a covered auto, which for liability coverage is "any auto" that Ransco owns, hires or borrows. Ransco clearly did not own Ms. Cutter's auto, but we again assume, *arguendo*, that Ransco hired or borrowed it. Ms. Cutter is nevertheless subject to exception (a), which expressly excludes the owner of an auto hired or borrowed from an employee. Ms. Cutter, who does not qualify under section one or two, can not qualify under section three, and is simply not a person insured for liability coverage.

■■ Our review of the entire policy has disclosed no detectable ambiguity, and, as we have said before, we will not force an ambiguity where none is apparent merely to resolve coverage in favor of the insured. *See Haley v. Allstate Ins. Co.*, 129 N.H. 512, 514, 529 A.2d 394, 396 (1987). Because we find that Ms. Cutter did not qualify as an "insured" under the defendant's unambiguous uninsured motorist coverage or under its liability coverage, we hold that the plaintiff is not entitled to receive underinsured motorist benefits and consequently reverse the trial court's decision.

*Reversed and remanded.*

HORTON, J., did not sit; the others concurred.