SISTER MARY THATTIL *vs.* DOMINICAN SISTERS OF
CHARITY OF THE PRESENTATION OF THE BLESSED VIRGIN,
INC., & another[1] (and a companion case[2]).

Norfolk. March 2, 1993. - June 3, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Underinsured motorist, Construction of policy. *Corporation*,
   Religious.

A member of a Roman Catholic order of nuns who, under the internal
   regulations of the order, had renounced her right to material goods and
   recognized that all property she received would belong to the commu-
   nity, was a "named insured" entitled to underinsured motorist benefits
   provided under a policy of motor vehicle insurance issued to the order
   as a Massachusetts religious corporation, where, in the unique circum-
   stances of the case (which were known to the insurer and the insurance
   agent), this court concluded that identity existed between the order and
   its individual members, and where to recognize coverage would further
   the legislative purpose underlying G. L. c. 175, § 113L, as in effect at
   the relevant time, as well as avoid an unconscionable result. [385-390]
   O'CONNOR, J., dissenting, with whom WILKINS & GREANEY, JJ.,
   joined.

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on November 21, 1990, and November 30, 1990,
respectively.

After the cases were consolidated for trial, a motion for
summary judgment was heard by *Suzanne V. DelVecchio*, J.,
and entry of separate and final judgment was ordered by
*Patrick F. Brady*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

---

[1] Aetna Casualty & Surety Company.

[2] Aetna Casualty and Surety Company *vs.* Sister Mary Thattil.

382                                   415 Mass. 381

Thattil *v.* Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc..

*John P. Graceffa* for Aetna Casualty & Surety Company.

*John C. Corrigan, Jr.* (*Frederic J. Torphy* with him) for Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.

*Roger J. Donahue, Jr.*, for the plaintiff, was present but did not argue.

LYNCH, J. These are consolidated actions for declaratory judgment as to whether the underinsurance coverage of $500,000 per person issued to the Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc. (Dominican Sisters), by Aetna Casualty and Surety Company (Aetna) is available to Sister Mary Thattil (Sister Thattil), a member of the Dominican Sisters. Sister Thattil was struck by a vehicle operated by an underinsured motorist while walking near the Dominican Sisters' provincial house in December of 1988 and filed a claim to recover under the underinsured motorists provision of the Dominican Sisters' policy. Aetna denied the claim, maintaining that Sister Thattil was not an "insured" under the policy, and Sister Thattil initiated this suit seeking a declaratory judgment that she is entitled to recover under the Dominican Sisters' policy. Aetna counterclaimed for declaratory judgment on the same issue and subsequently moved for summary judgment.[3] A judge in the Superior Court denied Aetna's motion, and ordered that summary judgment be entered in favor of Sister Thattil. A separate and final judgment was entered to that effect, which a second judge certified pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). Aetna appealed. We transferred the case here on our own motion, and we now affirm.

The relevant facts are not in dispute. Sister Thattil is, and was at all times material to this case, a member of the Dominican Sisters, a nonprofit religious corporation incorporated under G. L. c. 180 (1990 ed.). The Dominican Sisters is a religious order within the Roman Catholic Church, established and existing according to the mandate of canon law.

---

[3]The Dominican Sisters and Aetna also filed cross claims.

Pursuant to canon law, the Dominican Sisters is regulated internally by its "Constitutions" which provide that each of the Sisters "renounce[s] the right to the disposition and to the free use of material goods." Constitutions, Dominican Sisters of Charity of the Presentation of Our Lady § 23, at 33 (1981). Further, the Constitutions command, "Everything that the sisters may receive: salaries, indemnities, pensions, gifts, belongs to the community and must be remitted." *Id.* at § 24-02. Canon law and the Constitutions dictate that the personal and real estate of the Order be administered and safeguarded according to "civilly valid methods." Codex Iuris Canonici, 1983 Code c. 1284, § 2 (2). Constitutions, Dominican Sisters of Charity of the Presentation of Our Lady § 243, at 105.

On December 20, 1988, Sister Thattil was struck by a motor vehicle while walking near the Dominican Sisters' residence. As a result of the accident, Sister Thattil sustained serious injuries and will be confined to a wheelchair for the remainder of her life. At the time of the accident, the operator of the motor vehicle was covered by a motor vehicle insurance policy issued by Commerce Insurance Company (Commerce), with applicable policy limits of $100,000. Commerce paid the $100,000 limit of the policy to Sister Thattil. This amount, however, was not enough to pay her medical expenses, which had reached $240,000 at the time she commenced this action.

The Aetna policy lists the named insured as "Dominican Sisters of Charity Presentation Inc. and/or Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.," and states the occupation of the named insured as "religious order." The policy contains underinsured motorists protection in the amount of $500,000 per person and $500,000 per accident.

The Dominican Sisters had purchased automobile coverage from Aetna, through its agent, The Feitelberg Company, for several years. The policy issued to the Dominican Sisters for the period January 1, 1987, to January 1, 1988, included underinsured motorist coverage in the amount of $100,000 per

person and $300,000 per accident. In August of 1987, The Feitelberg Company wrote to Sister Vimala Vadakumpadan, the treasurer for the Dominican Sisters and urged her to increase the underinsured motorist coverage to the full amount of the bodily injury liability coverage listed in the Dominican Sisters' policy, at an additional cost of $176. This solicitation stated that the Dominican Sisters "must purchase [underinsured motorist coverage] to *protect yourself* from the large percentage of improperly insured drivers. . . . We have experienced several major claims in the past year that have dramatized the critical needs here" (emphasis in original).[4] Sister Vimala accepted the solicitation and paid the additional premium of $176. As a result, the underinsured motorist coverage was increased to $500,000 per person and $500,000 per accident for the policy covering the period of January 1, 1988 to January 1, 1989. The agent, Joseph H. Feitelberg, testified in his deposition that he understood the relationship

---

[4]The letter from Aetna's agent, The Feitelberg Company, to the Dominican Sisters states:

"Dear Client:

*Uninsured & Underinsured Motorists Coverage*

"It is estimated that some 25% of the automobiles driven in Massachusetts do *not* have *any* Liability Insurance in force. These are *Uninsured Motorists.*

"Another estimated 25% are protected with only the Commonwealth's minimum Liability Insured of $10,000 per person and $20,000 per accident. These are *Underinsured* Motorists.

"Coverage U, Protection against Uninsured and Underinsured Motorists, is coverage you must purchase to *protect yourself* from the large percentage of improperly insured drivers. Shouldn't you provide yourself with the same amount of protection you provide for others?

"*We recommend* that you purchase coverage for Uninsured & Underinsured Motorists *equal to the same limit that you have on your own automobile.* The additional annual cost to do this is $176.00.

"This coverage uniformity is now included in your premium. If you wish to reduce this coverage, please call us.

"We have experienced several major claims in the past year that have dramatized the critical needs here.

"As always we are available to review your coverage with you. Please call us with your questions.

Sincerely,
/S/            "

(Emphasis in original.)

415 Mass. 381                                                    385

Thattil *v.* Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc..

among the Dominican Sisters better than Aetna, and that, in his personal view, the policy issued provided Sister Thattil with underinsured motorist coverage in these circumstances.[5]

Sister Vimala stated in an affidavit that before Sister Thattil's accident Aetna sent a representative, William G. Benn, to conduct a survey regarding the use and maintenance of the automobiles used by the Sisters and insured by Aetna. During this survey, she maintains that Benn was told that the insured automobiles are not used for the personal benefit of individual Sisters since what the Sisters do is for the Order.

A motion for summary judgment is proper where no material facts are in dispute. *Miles* v. *Aetna Casualty & Sur. Co.*, 412 Mass. 424, 426 (1992). Where appropriate, summary judgment may be rendered against the moving party. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).[6] The Superior Court judge held that, pursuant to the intended legislative policy of G. L. c. 175, § 113L, as amended through St. 1980, c. 532, Sister Thattil qualified as a named insured under the policy.[7] We agree.

The Aetna policy's underinsured motorist provision reads as follows:

---

[5]Feitelberg testified that "it was reasonable for [the Dominican Sisters] to believe . . . that if an accident happened involving a member of the order who was a pedestrian, she would be the beneficiary of this [underinsured] coverage for which they paid a separate additional premium." He also stated, "Certainly to the level of whatever the regulations of the Commonwealth and the law of the Commonwealth would permit it," he and his company intended to provide the Dominican Sisters and Sister Thattil with all of the underinsured motorist benefits provided to other individuals that purchased coverage from his agency. He agreed that the policy language, insofar as it did or did not provide benefits to Sister Thattil in these circumstances, is at best ambiguous.

[6]A declaratory judgment in an action provides an appropriate means of deciding a dispute concerning the meaning of language in an insurance policy. *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc.*, 407 Mass. 675, 685 (1990). The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court. *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

[7]See note 10, *infra*. See also St. 1988, c. 273, § 46.

"The Company will pay such sums as the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an . . . underinsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such . . . underinsured automobile . . . ."

The Aetna policy defines "Insured" as follows:

"(1) The Named Insured as stated in Item 1 of the declarations . . . and, while residents of the same household, the spouse of any such Named Insured and relatives of either;

(2) any other person while occupying an insured automobile; and

(3) any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (1) or (2) above."[8]

Categories (2) and (3) of the definition do not apply. Under category (1), Sister Thattil is also not a "spouse" or "relative" of the insured. In deciding whether she still falls within category (1), we construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter. *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 266 (1987). *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984).[9] No matter how ex-

---

[8]In a deposition, Andrew F. Cardoza appeared for Aetna and testified that the policy did not provide coverage to anybody under the first and third definitions of "Insured," and that he did not know why or if the particular policy should have been sold to the Dominican Sisters. He conceded that, if the policy had been issued to a Sister individually, as opposed to a commercial policy, Sister Thattil would be entitled to underinsured benefits as a member of the household of the individual to whom the policy was issued.

[9]Because the language of the disputed provision is mandated by statute and approved by the Commissioner of Insurance, the rule of construing

plicit the language may be, it cannot prevail if it is contrary to the statutory language or the legislative policy of G. L. c. 175, § 113L. *Cardin* v. *Royal Ins. Co.,* 394 Mass. 450, 453 (1985).

At the time the Aetna policy was issued to the Dominican Sisters, both underinsured and uninsured motorist coverages were mandatory pursuant to G. L. c. 175, § 113L.[10] *Vaiarella* v. *Hanover Ins. Co.,* 409 Mass. 523, 525 (1991). Both coverages worked to further the legislative policies inherent in the version of G. L. c. 175, § 113L, effective at that time. *Id.* at 525-526. *Cardin* v. *Royal Ins. Co., supra* at 454.

General Laws c. 175, § 113L, was enacted to protect the public from injury caused by negligent and financially irresponsible motorists. *Johnson* v. *Hanover Ins. Co., supra* at 263. See *Cardin* v. *Royal Ins. Co., supra* at 454, quoting 1968 Senate Doc. No. 1030, at 7 (aim of G. L. c. 175, § 113L, is "to minimize the possibility of . . . catastrophic financial loss [to] the victims of an automobile accident"). The statute was intended to protect the named insured and all household members "in the event of death or injury caused by the negligence of an uninsured motorist, whether such accident victims are occupants of a motor vehicle or pedestrians."[11] *Johnson* v. *Hanover Ins. Co., supra* at 263, quoting 1968 Senate Doc. No. 1030, at 6-7. The only limits on this coverage which the statute comprehended were that the insured be legally entitled to recover damages, that the

---

ambiguities in the policy against the insurer does not apply. *Bilodeau* v. *Lumbermens Mut. Casualty Co.,* 392 Mass. 537, 541 (1984).

[10]As of January 1, 1989, underinsured motorist insurance is optional. *Vaiarella* v. *Hanover Ins. Co.,* 409 Mass. 523, 525 n.3 (1991). H. Alperin & R. Chase, Consumer Rights and Remedies § 371, at 63 (Supp. 1992).

[11]The term "household member" has no precise or inflexible meaning. *Vaiarella* v. *Hanover Ins. Co., supra* at 527. Rather, an analysis of the issue must proceed on a case-by-case basis with an evaluation and balancing of all relevant factors. *Id.* Uninsured coverage has also been described as extending to "the named insured and that person's designated circle of connected persons." *Shelby Mut. Ins. Co.* v. *Pratt,* 28 Mass. App. Ct. 913-914 (1989).

tortfeasor be uninsured or underinsured, and that payment not exceed the monetary limit of the insured's policy. *Cardin v. Royal Ins. Co., supra* at 455.[12]

Were we to interpret this policy strictly as Aetna contends, Sister Thattil could receive underinsurance motorist coverage only if she were occupying a vehicle insured by the Dominican Sisters at the time of the loss. She could never recover if she were not in one of the insured vehicles, or, as here, if she were a pedestrian at the time of the loss. Such a strict reading of the policy ignores the unique circumstances in which the Dominican Sisters lived, of which Aetna was aware, and contravenes the intended legislative policy of G. L. c. 175, § 113L. Sister Thattil's vows precluded her from owning an automobile; all her personal possessions were given to, and retained as property of, the Dominican Sisters. It was impossible, thus, given her situation, for Sister Thattil to purchase underinsurance coverage in a personal automobile policy and provide herself with more comprehensive protection than that provided by the policy issued to the Dominican Sisters. The only policy from which she could receive underinsurance coverage was that issued to the Dominican Sisters as the named insured.

As a Dominican Sister who has renounced her right to material goods and has recognized that everything belongs to the community, Sister Thattil has merged her identity with that of the Order. In these unusual circumstances we conclude that identity exists between the Order and its individual members. This identity should not be ignored because the policy described the insured in its corporate form.

---

[12]As we said in *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 452 (1985): "Unlike automobile *liability* insurance, uninsured motorist coverage is not restricted by statute to situations 'arising out of the ownership, operation, maintenance, control or use' of the insured motor vehicle. See G. L. c. 90, § 34A. The statute [G. L. c. 175, § 113L] therefore does not limit [an insured's] recovery to situations involving the motor vehicle she has insured. Instead, uninsured motorist coverage insures persons, wherever they may be, when and if they are injured by an uninsured motorist." (Emphasis in original.)

415 Mass. 381                                           389

Thattil *v.* Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc..

As stated by the Superior Court judge, the Dominican Sisters "is not an ordinary business corporation. . . . [It] is comprised of several nuns who make no distinction between their business and personal lives . . . [and who] turn over all of their material possessions to the community in which they live . . . ." Further, the Dominican Sisters exists as a charitable, non-profit corporation run for "religious purposes," G. L. c. 180, § 6, not as a business corporation formed for the purposes of making a financial profit.

The cases relied on by Aetna which hold that a member of a business corporation may not recover under the corporate insurance policy are not persuasive. See, e.g., *Cutter* v. *Maine Bonding & Casualty Co.*, 133 N.H. 569 (1990); *Buckner* v. *Motor Vehicle Accident Indem. Corp.*, 66 N.Y. 2d 211 (1985); *Giambri* v. *Government Employees Ins. Co.*, 170 N.J. Super. 140 (1979); *General Ins. Co.* v. *Icelandic Builders, Inc.*, 24 Wash. App. 656 (1979).

Aetna had dealt with the Dominican Sisters for several years, had sent a representative to interview them, and was aware of these unique circumstances. Moreover, Aetna did not at any time inform the Dominican Sisters that they did not have full personal underinsured motorist coverage, or that they could purchase additional personal coverage. Aetna cannot now deny Sister Thattil the protection of underinsured coverage required by G. L. c. 175, § 113L. "Where an insurance policy provision leads to an unconscionable result, or violates public policy, it may be held invalid even if, upon a close reading, the terms are clear." *Santos* v. *Lumbermens Mut. Casualty Co.*, 408 Mass. 70, 86 (1990). "The well settled principles covering the interpretation of an ordinary policy of insurance have been properly disregarded in determining the scope and extent of a compulsory motor vehicle policy in order to accomplish the legislative aim of providing compensation to those who have been injured by auto-

mobiles." *Cardin* v. *Royal Ins. Co., supra* at 454, quoting *Desmarais* v. *Standard Accident Ins. Co.*, 331 Mass. 199, 202 (1954).[13]

Given the unique circumstances of the Dominican Sisters and the policy mandates of G. L. c. 175, § 113L, we conclude that the underinsured motorist coverage applies to Sister Thattil and that the order granting summary judgment was proper.

*Judgment affirmed.*

O'CONNOR, J. (dissenting, with whom Wilkins and Greaney, JJ., join). As the court has concluded, the plaintiff is entitled to a judgment declaring that the underinsurance coverage of Aetna's policy is available to her only if she is "the Named Insured as stated in Item 1 of the declarations." Very clearly, the plaintiff is not the named insured as stated in item 1 of the declarations, namely "Dominican Sisters of Charity Presentation Inc. and/or Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc." The fact that the plaintiff has "renounced her right to material goods and has recognized that everything belongs to the community," *ante* at 388, does not mean that the plaintiff has, or could have even if she had wanted to, relinquished her individuality and given up her identity. Indeed, if "Sister Thattil has merged her identity with that of the order," as the court says she has, and if the heading of this case is correct, this case presents the anomalous situation of a party suing herself (or itself). The truth is that the plaintiff, Sister Thattil, is a member of an incorporated order of nuns, a defendant, but Sister Thattil does not constitute the order. The court's result oriented indulgence in the fiction that Sister

---

[13]"A provision in an insurance policy that negates the very coverage that the policy purports to provide in the circumstances where the person is liable is void as against public policy." *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. 354, 358 (1990).

415 Mass. 381                                    391

Thattil *v.* Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc..

Thattil is the incorporated order to which she belongs is unjust to the defendant insurer.

"[The court] must construe the words of the policy according to 'the fair meaning of the language used, as applied to the subject matter,' . . . as long as the statutory language or legislative policy of G. L. c. 175, § 113L, is not contravened." *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986) (citations omitted). *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 266 (1987). It cannot reasonably be said that, according to the fair meaning of the language used in item 1 of the policy's declarations, the plaintiff is the Named Insured, or that, according to the fair meaning of any other provision, the plaintiff is entitled to recover under Aetna's policy. Also, in my view and contrary to the concluding sentence of the court's opinion, it cannot reasonably be argued that the legislative policy served by G. L. c. 175, § 113L, is contravened if the underinsured motorist coverage does not apply to the plaintiff. Section 113L "was intended to protect 'the named insured and members of his family in the event of death or injury caused by the negligence of an uninsured [or underinsured] motorist, whether such accident victims are occupants of a motor vehicle or pedestrians.' 1968 Senate Doc. No. 1030, at 6-7." *Johnson* v. *Hanover Ins. Co.*, supra at 263. Sister Thattil simply is not "the named insured [or] member of his family," whom § 113L was designed to protect, and the court should be most reluctant to "declare as violative of public policy a provision which, at least with respect to mandatory underinsurance, has been explicitly sanctioned by the Legislature." *Santos* v. *Lumbermens Mut. Casualty Co.*, 408 Mass. 70, 86 (1990).

We have said that "[w]here an insurance policy provision leads to an unconscionable result, or violates public policy, it may be held invalid even if, upon a close reading, the terms are clear." *Id.* Even if this principle were to call not only for the striking of an invalid provision but also for the rewriting of the policy in some circumstances, as the court does here, the principle is not properly applied to this case. As is dis-

cussed above, Aetna's insurance policy does not violate public policy. Furthermore, it does not lead to an unconscionable result in this case. Surely, it cannot rightly be said that the policy yields an unconscionable result in this case because no Aetna representative told the Dominican Sisters in advance of selling the policy what situations the clear language of the policy would not cover. No misrepresentations were made, and the underinsured motorist coverage was not illusory since, if the plaintiff had been injured while occupying an insured automobile owned by the order, underinsured motorist coverage would have been available to her.

In my view, no underinsured motorist coverage is available to the plaintiff under the policy on which she relies. That policy neither violates public policy nor leads to an unconscionable result and its language is clear. Justice requires that the judgment be reversed and the case be remanded to the Superior Court for the entry of summary judgment for Aetna.