Giles, J.

Introduction

In this declaratory relief action, the plaintiff, Universal Underwriters Insurance Company (“Universal”), is seeking declarations that defendant Keith Scher (“Scher") was not an insured under two liability policies issued to his employer and that Universal has no duty to defend or indemnify him in connection with the claims against him in an underlying wrongful death action. Defendants Scher and Stephen Haley (“Haley”), the administrator of the decedent’s estate, oppose the motion. After hearing, and for the reasons set forth below, the motion is ALLOWED IN PART and DENIED IN PART.

Background

Universal issued to Charles River East, Inc., doing business as Charles River Saab (“CRE”), a car dealership, two automobile liability policies. CRE was the named insured under both. One policy was a Massachusetts Garage Liability Policy, Number G203187A (“Garage Liability Policy”), effective August 1, 2000, to August 1, 2001. The Garage Liability Policy provided, inter alia, bodily injury liability coverage of $100,000 per person/$300,000 per accident to the named insured; to “any other person responsible for the operation of the insured motor vehicle with the express or implied consent of the named insured”; and to any employee of the insured “while using such motor vehicle with the permission of the named insured, provided such person’s actual operation or, if he is not operating, his other actual use thereof is within the scope of such permission.” The other policy was an Umbrella Liability Policy, Number U203187A (“Umbrella Liability Policy”), effective the same dates and with a limit of liability of $20,000,000 for each occurrence. The Umbrella Liability Policy provided personal injury to the liability coverage to the named insured and, with respect to any automobile owned by or hired for the use in behalf of the named insured, also Ray Ciccola.
On or about October 29, 2000, Scher was hired by CRE to work as an automobile salesman. It is undisputed that, as part of his responsibilities as a salesman, he was authorized to operate dealership vehicles to test drive them with and deliver them to customers, to move them around the lot, and to go off to fill them with gasoline. According to Scher, he was never informed of any policy limiting his use of dealership vehicles; and he alleges that perhaps three or four other salespeople took dealership vehicles overnight on a regular basis. He also claims that it was common practice at CRE for salespeople to take cars off the premises without first obtaining express consent.
In his three or so weeks of employment, Scher had driven his Honda Accord automobile to work. (As part of his compensation package, he received a monetary “car allowance” of approximately $250-$300 per month.) On November 23, 2000, he loaned his car to a friend, who was supposed to return it to CRE at the usual closing time of 8:00. However, as it turned out, Scher was informed by CRE’s business manager that he could go home at 5:30 p.m. because the dealership was closing early for the upcoming Thanksgiving holiday. After unsuccessful attempts to contact his friend, Scher decided at about 6:00 p.m. to take a CRE dealer plate, attach it to a 2000 Saab Viggen automobile, and drive home. Prior to this time, he had never driven a dealership car off the premises for personal use, let alone driven it home and kept it overnight; and, on this occasion, he did not inform any CRE employee of his intentions nor seek anyone’s express permission to do so.
Scher drove the Saab to his friend’s house a few minutes away. Upon discovering that the friend was not at home, he drove forty to sixty minutes to his home in Hudson, Massachusetts. He remained there until about 2:00 a.m., when a series of telephone calls from his stepsister asking him to pick her up from a bar in Boston impelled him to drive to Boston in order to give her a ride back home to Hudson. While driving home in the Saab Viggen with his stepsister and her friend, Scher, who purportedly fell asleep at the wheel, was involved in an accident with Haley’s vehicle that resulted in the death of Haley’s wife, Suzette KincerHaley, and serious injuiy to Haley.
In the aftermath of the incident, CRE did not report the Saab Viggen as stolen. The accident was investigated by Massachusetts State Police Trooper Christopher Murray (“Tpr. Murray”), who cited Scher for motor vehicle homicide, operating so as to endanger, speed *446 ing, following too closely, and operating a vehicle after his license was suspended but not for theft of the automobile. As part of his inquiry, Tpr. Murray spoke with Martha Romero (“Romero”), CRE’s business manager, who stated that Scher had permission to use the Saab he was operating at the time of the incident and that, had he asked to use the vehicle, he would have been authorized to do so. Jeremy Laufer (“Laufer”),[1] CRE’s general sales manager, also confirmed that salespeople would drive dealership cars from time to time.

Discussion

I.Summary Judgment Standard

Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of law. Mass.RCiv.R 56(c); Highlands Ins. Co. v. Aerovax, Inc. 424 Mass. 226, 232 (1997). The moving party bears the burden of demonstrating affirmatively both the absence of triable issues and its entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate the absence of triable issues by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the nonmoving party must articulate specific facts establishing the existence of general issues of material facts. Pederson, supra at 17. Mere assertions of the existence of disputed facts without evidentiary support cannot defeat a summary judgment motion. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).

II.Garage Liability Policy

Universal contends that Scher cannot be included in the definition of “insured” under the Garage Liability Policy because it is “undisputed” that he lacked the express or implied permission to use the Saab Viggen at the time of the incident. However, finding genuine issues of material fact with regard to whether Scher was an implied and/or express permissive user of the vehicle at the time of the accident, see Mass.R.Civ.P. 56(c), the court disagrees that Universal is entitled to a declaratory judgment of no duty to defend or indemnify Scher under this policy as a matter of law.
Scher and Haley have raised triable issues as to Scher’s permissive use of the Saab through the following direct and circumstantial evidence: Scher’s observations of other salespeople using dealership cars for personal use without prior consent, Laufer’s confirmation that salespeople would drive CRE’s vehicles from time to time, CRE’s not reporting the automobile stolen and Scher not being charged with its theft, and especially Romero’s statement that Scher had permission to use the Saab at the time of the accident. In addition, Scher and Haley may invoke the prima facie effect of G.L.c. 231, §85A for these purposes. See Mitchell v. Hastings & Koch Enterprises, Inc., 38 Mass.App.Ct. 271, 275-76 (1995)

III.Umbrella Liability Policy

The Umbrella Liability Policy is on a different footing than the Garage Liability Policy because of the former’s more limited definition of “insured,” that is, CRE (the named insured) and one additional designee, Ray Ciccola (with respect to any vehicle owned or hired by CRE). No one else, including Scher, is designated. The words of an insurance policy must be construed in their usual and ordinary sense. Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 280 (1997), citing Thattil v. Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc., 415 Mass. 381 (1991), and Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 797 N.E.2d 1256 (2003). Haley nevertheless urges this court to expand the coverage to CRE’s employees, including Scher. The court is unpersuaded.
The Thattil and Westfield Insurance Co. cases are readily distinguishable because they involved the subject of underinsured and uninsured motorist coverages, which are mandatory in Massachusetts pursuant to G.L.c. 175, §113L. “General Laws c. 175, §113L, was enacted to protect the public from injury caused by negligent and financially irresponsible motorists.” Thattil, 415 Mass. at 387. In the case at bar, on the other hand, the optional excess coverage in question applies to policyholders (and any named designees) who are potentially liable in automobile accidents, not to the conceivable victims of those tortfeasors. Therefore, the same policy consideration of protecting automobile accident victims from the possibility of catastrophic financial loss does not obtain. See id Furthermore, other states specifically have held that a member of a business corporation may not recover under the corporate insurance policy. See, e.g., Cutter v. Maine Bonding & Casualty Co., 133 N.H. 569 (1990); Buckner v. Motor Vehicle Accident Indem. Corp. 66 N.Y.2d 211 (1985); Giambri v. Government Employees Ins. Co., 170 N.J.Super. 140 (1979); General Ins. Co. v. Icelandic Builders, Inc., 24 Wash.App. 656 (1979). Accordingly, because there is no possibility that Scher qualifies as an “insured" under the Umbrella Liability Policy, Universal is not required to defend or indemnify him under that policy. See Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318-19 (1983).

ORDER

For all the foregoing reasons, Universal’s motion for summary judgment is DENIED with regard to the Garage Liability Policy but ALLOWED with regard to the Umbrella Liability Policy. Therefore, the court DECLARES that the Umbrella Liability Policy does not require Universal to defend or indemnify Scher for any liability arising out of the underlying motor vehicle accident on November 23, 2000.

His deposition refers to him as “Jeremy Morrissey.”