McDonough, Edward J., J.
This declaratory judgment action came on for hearing on June 18, 2013 on plaintiff Metropolitan Property and Casualty Insurance Company’s motion for summary judgment regarding the claim for underinsured motorist benefits coverage by defendant Norberto Perez, Jr. under Metropolitan’s auto policy issued to Perez’s mother, defendant Vivian Santiago.
Introduction
A motion for summary judgment is proper where no material facts are in dispute. Miles v. Aetna Casualty & Sun Co., 412 Mass. 424, 426 (1992). A declaratory judgment in an action provides an appropriate means of deciding a dispute concerning the meaning of language in an insurance policy. Lumbermens Mut. Casualty Co. v. Belleville Indus., Inc., 407 Mass. 675, 685 (1990). The responsibility of construing the language of an in-surance contract is a question of law for the trial judge, and then for the reviewing court. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). Where appropriate, summary judgment may be rendered against the moving party. Mass.RCiv.P. 56(c), 365 Mass. 824 (1974). See Sister Thattil v. Dominican Sisters of Charity of Presentation of Blessed Virgin, Inc., 415 Mass. 381, 385 (1993).[1]
The Pertinent Facts[2]
Defendant Perez was operating a motorized dirt bike on a public way in the city of Springfield on March 9, 2012, when he sustained bodily injuries as a result of a collision between the dirt bike which he was operating and a Honda automobile operated by one Fernandez on Avery Street in Springfield Massachusetts. Perez was headed north-bound on the dirt bike when he encountered the Fernandez vehicle going in the opposite direction. Fernandez is alleged to have made a left-hand turn toward a driveway on Avery Street into the path of Perez on the dirt bike. The Fernandez vehicle and the dirt bike operated by Perez collided, causing Perez to be jettisoned from the dirt bike. Perez estimated he was traveling between 30 and 35 mph. He landed on the paved surface on Avery Street. Perez sustained significant dental injuries in addition to split tendons in his foot and facial scarring.
The operator’s license which Perez held at the time of the accident listed his residential address as 69 Appleton St., Apt. 1, Springfield, Massachusetts. This was the same address of his aunt, Greychi Perez, with whom he had resided. Perez acknowledged residing with his aunt for four to six months but claims that he moved back to the residence of his mother, Vivian Santiago, prior to the accident.[3]
Discussion
The issue is whether Perez, assuming he was a member of his mother’s household at the time of his accident, is entitled to underinsured motorist benefits under Metropolitan’s policy issued to his mother when Perez was injured by an underinsured motorist while Perez was operating a dirt bike. The issue has yet to be addressed by a Massachusetts appellate court or, apparently, in any Massachusetts published trial court decision.
An individual who was a household member of the insured can recover underinsured benefits despite not occupying an auto. The Massachusetts Automobile Insurance Policy (7th edition) at issue provides in Part 12 . . .
Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injuiy to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance. We will pay damages to or for: Any household member, while occupying your auto, while occupying an auto not owned by you, or if injured as a pedestrian. (Emphasis supplied.)
*344 It is clear that Perez was not occupying an auto within the definition of “auto” as defined under the policy. The policy definition of “auto” specifically excludes a “dirt bike.” The 7th edition of the Massachusetts Automobile Insurance Policy, under “definitions” provides: “auto—means a land motor vehicle or trailer but does not include: . . . D. Any vehicle not subject to Massachusetts motor vehicle registration such as a moped, dirt bike, mini-bike, snowmobile, or all-terrain vehicle (A.T.V.). (Emphasis supplied.)
Because it is undisputed that Perez was not occupying an auto at the time of the accident, he submits he qualifies as a “pedestrianunder Part 12 of the policy covering underinsured motorist benefits.
The “Definitions" section language of the policy broadly defines the term “pedestrian” as including “anyone incurring bodily injury as a result of being struck by an auto in an accident who was not occupying an auto at the time of the accident.” (Emphasis supplied.) The term “pedestrian” is not defined in G.L.c. 175, §113L which governs uninsured and un-derinsured motorist benefits.[4]
But Metropolitan counters, arguing any characterizing Perez as a “pedestrian,” when at the time of the accident he was on a motorized vehicle traveling at a significant rate of speed, “is to stretch the meaning of the term ‘pedestrian’ well beyond the breaking point.” See Metropolitan’s reply brief at page 2. For support, Metropolitan points to the Supreme Judicial Court’s decision in Pilotte v. Aetna Casualty & Surety Company, 384 Mass. 805 (1981), which involved a claim by the estate of a person killed in a motor vehicle crash seeking personal injury protection (PIP) benefits. In that case the decedent was killed while seated in an unregistered, uninsured vehicle on private property. The tortfeasor’s vehicle left the public way and struck the stored vehicle, causing decedent’s death. The court concluded that PIP benefits could not be recovered because an individual seat-ed in a stationary motor vehicle could not be deemed a “pedestrian." The court explained that: “The term ‘pedestrian,’ from the Latin word ‘pedester,’ means one who travels on foot.” Id. at 805. Metropolitan also points to Mendes v. Costa, 326 Mass. 608, 610 (1950), where a person who placed a foot on the running board of a motor vehicle was not deemed a pedestrian. (“We are of opinion that the plaintiffs status was not that of a pedestrian or traveler to whom the defendant would be liable for ordinary negligence. When the plaintiff stepped on the running board of the defendant’s automobile the defendant’s duty of care toward her ceased to be measured by his duly toward travelers in general.”)
Metropolitan also points G.L.c. 90, §30A providing that the term “pedestrians shall include persons operating bicycles, tricycles and similar vehicles and persons upon horseback or in vehicles drawn by horses or other draft animals." Under this definition of pedestrian, Metropolitan contends Perez is, by implication, excluded because the vehicle he was operating was motorized. Likewise, Metropolitan points out that under Part 2 of the policy governing personal injury protection (PIP), there is a specific exclusion for: “anyone who, at the time of the accident, was operating or occupying a motorcycle, any motor vehicle not subject to motor vehicle registration, or a motorized bicycle, including a moped.” Metropolitan argues that by operating the dirt bike, Perez is excluded from PIP benefits under this policy exclusion, and by logical extension, Perez may not recover underinsured benefits either.
But Metropolitan’s arguments are undercut by that fact that the arguably more restrictive definition of “pedestrian” under §30A of chapter 90 applies “as [those terms] are used in sections 34A through 34N” of chapter 90, and is not applied to chapter 175, §113L. Moreover, the policy Part 2 exclusion quoted above which operates to deny PIP benefits to operators of motorcycles, mopeds and other motor vehicles not subject to registration does not appear in Part 12 which governs underinsured motorist protection.
A household member who owns a Massachusetts automobile policy providing underinsured motorist coverage may not recover underinsured motorist benefits under a policy issued to another household member. Goodman v. American Casualty Co., 419 Mass. 138, 138-39 (Mass. 1994). It is undisputed that Perez did not own his own automobile policy. The parties agree the dirt bike which Perez was operating was not a vehicle subject to registration and insurance in Massachusetts.[5] Thus, unlike a claimant who owns his own auto policy, Perez had' no opportunity to purchase optional underinsurance benefits for himself.
Metropolitan’s arguments, although not without logical appeal, do not take into account the differences in the nature of the coverages provided under its policy. Given the significant differences between personal injury protection coverage, liability coverage and underinsured motorist coverage, it is not illogical for the Commissioner of Insurance to view pedestrians differently depending upon the type of coverage at issue. Given that Perez could not purchase underin-sured motorist coverage for his operation of the dirt bike, he stands in essentially the same position as does any pedestrian with respect to the public policy underlying the creation of uninsured and underin-sured coverage.
General Laws c. 175, §113L, was enacted to protect the public from injury caused by negligent and financially irresponsible motorists. Johnson v. Hanover Ins. Co., 400 Mass. 259, 263 (1987). See Cardin v. Royal Ins. Co., 394 Mass. 450, 454 (1985), quoting 1968 senate Doc. No. 1030, at 7 (aim of G.L.c. 175, §113L, is “to minimize the possibility of... catastrophic financial loss [to] the victims of an automobile accident”). The statute was intended to protect the named insured and all household members “in the event of death or *345 injury caused by the negligence of an uninsured motorist, whether such accident victims are occupants of a motor vehicle or pedestrians.” Johnson v. Hanover Ins. Co., supra at 263, quoting 1968 senate Doc. No. 1030, at 6-7 (emphasis supplied). The only limits on this coverage which the statute comprehended were that the insured be legally entitled to recover damages, that the tortfeasor be uninsured or underinsured, and that payment not exceed the monetary limit of the insured’s policy. Cardinv. Royallns. Co., supra at 455.
As was said in Cardin v. Royal Ins. Co., 394 Mass. 450, 452 (1985): “Unlike automobile liabiliiy insurance, uninsured motorist coverage is not restricted by statute to situations ‘arising out of the ownership, operation, maintenance, control or use’ of the insured motor vehicle. See G.L.c. 90, §34A. The statute [G.L.c. 175, §113L] therefore does not limit [an insured’s] recovery to situations involving the motor vehicle she has insured. Instead, uninsured motorist coverage insures persons, wherever they may be, when and if they are injured by an uninsured motorist.” (Emphasis in original.) Quoted in Sister Thattil v. Dominican Sisters of Charity of Presentation of Blessed Virgin, Inc., 415 Mass. 381, 388 (1993). The rationale applies with equal force to persons injured by underinsured motorists.
Conclusion
Metropolitan’s arguments notwithstanding, plainly, Perez qualifies as a pedestrian under Part 12 of Metropolitan’s policy governing underinsured motorist benefits. Courts “construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter.” Johnson v. Hanover Ins. Co., 400 Mass. 259,266 (1987). Bilodeau v. Lumbermens Mut. Casualty Co., 392 Mass. 537, 541 (1984).
Therefore plaintiff Metropolitan’s motion for summary judgment is denied, and summary judgment is granted to defendants and shall enter against Metropolitan declaring that Perez is entitled to coverage for underinsured motorist benefits under Metropolitan’s policy.
Date: 6/28/13

At oral argument, I inquired of counsel as to the nature of any trial to be held in the event that defendant’s motion for summary judgment on coverage was denied. Counsel do not disagree that based on the material undisputed facts, I may properly treat this motion and opposition as cross motions for summary judgment given that the coverage issues arising from the undisputed facts present pure questions of law.

I include this fact recitation largely as background, as the particulars of the accident are not germane to the coverage dispute. Defendant Perez makes clear in his brief that the circumstances of the accident as characterized in the Metropolitan brief are in dispute. Likewise, Metropolitan disagrees with the Perez characterization as to why Liberty Mutual elected to pay Perez the policy limits covering the vehicle which struck the dirt bike operated by Perez.

The parties agree that if I find coverage under the Metropolitan policy, the matter will proceed to arbitration with respect to the amount of an award, if any, of underinsured motorist benefits to Perez. The parties agree that the fact question of whether or not Perez was a member of his aunt’s household, while not disputed for the purposes of determining coverage in this action, is not now before me and may well be disputed at the time of the arbitration hearing.

As of January 1, 1989, underinsured motorist insurance is optional. Vaiarella v. Hanover Ins Co., 409 Mass. 523, 525 n.3 (1991). H. Alperin & R. Chase, Consumer Rights and Remedies, §371, at 63 (Sup. 1992).

A dirt bike is not a “motor vehicle” under G.L.c. 90, §1. Hein-WemerCorp. v. Jacksonlndus., Inc., 364 Mass. 523, 529 (1974) (although in a different context, court stated that “beyond doubt” the definition of “motor vehicles” used in G.L.c. 90, §1, “includes only the vehicles which are designed for regular use in the transportation of persons and property on the traveled part of public highways): Arbélla Mut. Ins. Co. v. Vynorious, 34 Mass.App.Ct. 121, 124 (1993) (“Just as clearly, many kinds of special vehicles . . . are excluded.” Snowmobiles, being vehicles not designed for regular use on public highways, do not fall within that definition. ”A separate chapter, G.L.c. 90B, dealing with motorboats and recreational vehicles, regulates “snow vehicles,” or snowmobiles. They are required to he registered, see G.L.c. 90B, §21, but with the director of the division of law enforcement of the Department of Fisheries, Wildlife and Environmental Law Enforcement, not the Registrar of Motor Vehicles. Licensing, see G.L.c. 90B, §26, and insurance are not required' (emphasis supplied)).
A dirt bike is a recreational vehicle under G.L.c. 90B, §20: “Recreation vehicle” or “off-highway vehicle,” any motor vehicle designed or modified for use over unimproved terrain for recreation or pleasure while not being operated on a public way as defined in chapter 90 including, but not limited to, all-terrain vehicles, off-highway motorcycles, dirt bikes, recreation utility vehicles and all registered motor vehicles while not being operated on a public way as defined in said chapter 90. (Emphasis supplied.)
Liabiliiy claims for negligent use of dirt bikes have been directed against the owner’s homeowners policy. See Commerce Ins. Co. v. Barros, 1 Mass. L. Rptr. 7 (Mass.Super.Ct. 1993) (Stearns, J.) (court found it was clear that the dirt bike was covered by the homeowners liabiliiy policy).