ITALIA VAIARELLA *vs.* HANOVER INSURANCE COMPANY.

Plymouth. January 8, 1991. - March 11, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy, Underinsured motorist, Coverage. *Statute,* Construction. *Consumer Protection Act,* Insurance. *Words,* "Household member."

The plaintiff in a declaratory action against an insurance company was not, in the circumstances, a member of her son's household, for the purpose of receiving underinsured motorist coverage under the son's automobile insurance policy with the defendant, when she moved to another State but intended to spend part of every year in her son's home, and consequently, the defendant did not engage in unfair claim settlement practices under G. L. c. 176D, § 3 (9) (*b*), (*d*), (*f*), so as to have violated G. L. c. 93A, when it refused to make an offer of settlement with respect to the plaintiff's accident under the underinsured motorist provision of the son's policy. [525-530]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1987.

The case was heard by *John M. Xifaras,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph J. Machera* for the plaintiff.

*Stephen M.A. Woodworth* for the defendant.

GREANEY, J. In this appeal we are asked to determine whether the plaintiff, Italia Vaiarella, is a member of her son's household for the purpose of receiving underinsured motorist coverage under the son's automobile insurance policy with the defendant, the Hanover Insurance Company, when the plaintiff moved to another State but intended to spend part of every year in her son's home. A judge of the Superior Court, after a bench trial, concluded that she was not a member of the son's household. Judgment entered for

the defendant. The plaintiff appealed, and we transferred the appeal to this court on our own motion. We affirm the judgment.

The facts, as found by the trial judge and supplemented by other uncontroverted information in the trial record, are as follows. From 1941 until August, 1984, the plaintiff and her husband, Salvatore Vaiarella, lived in East Boston and Winthrop. Beginning in August, 1984, for approximately four months, the plaintiff and her husband lived with their son, Joseph (son), in his home in Brockton. They brought with them some furniture and some clothes.[1] At this time the plaintiff and her husband commenced having their mail sent to their daughter's home in East Boston. She took care of their business affairs for them. The plaintiff's husband bought an automobile in the Brockton area. During these four months, the son purchased building materials in order to convert his garage into living quarters for his parents. The facts do not indicate that the plaintiff and her husband were at any time financially dependent on the son.

In November, 1984, the plaintiff and her husband moved to Winter Haven, Florida, where they purchased a mobile home. They planned to live in Winter Haven during the months of January to May, and live in Brockton from May to December. The plaintiff's husband registered the car in Florida and obtained a Florida driver's license. This was necessary to purchase the mobile home. They received mail both at their Winter Haven home and at their daughter's home in East Boston. The plaintiff and her husband went to their son's home in Brockton for the Christmas holidays in 1984, and then returned to Winter Haven. The living quarters in the garage, however, were not completed until May of 1985. On May 3, 1985, while driving from Winter Haven to Massachusetts, where they planned to stay at their son's home in Brockton, the plaintiff and her husband were involved in an

---

[1] The judge found that the plaintiff and her husband did not bring any personal belongings to the son's house. However, this finding is clearly contradicted by the record.

automobile accident. The plaintiff's husband, who was driving the automobile, was killed, and the plaintiff was injured.

At the time of the accident, the son had a standard form automobile policy with the defendant, which provided uninsured and underinsured coverage for him and for relatives who were living in his household. The plaintiff filed a complaint in Superior Court on January 27, 1987, against the defendant, alleging that the defendant had violated G. L. c. 93A, §§ 2 (a) and 9 (1988 ed.), by refusing to make an offer of settlement with respect to her accident under the underinsured portion of the son's policy.[2]

The judge ruled in his memorandum of decision that there was no violation of G. L. c. 93A because the plaintiff was not a member of the son's household at the time of the accident for the purposes of coverage under the underinsured motorist provisions of the son's insurance policy. On appeal, the plaintiff argues that the judge erred in concluding that she was not a member of her son's household for purposes of the policy. In addition, she argues that the judge erred in ruling that the defendant made a reasonable investigation and good faith determination that the plaintiff was not a household member, and, therefore, did not violate G. L. c. 93A or G. L. c. 176D.

At the time of the accident, underinsured motorist coverage was mandatory under G. L. c. 175, § 113L (1988 ed.). See St. 1980, c. 532.[3] The object of such coverage was "to provide excess bodily injury coverage in the event that the damages recovered by the insured against an insured tortfeasor exceed the limits of the tortfeasor's liability insurance policy." H. Alperin & R. Chase, Consumer Rights and Remedies § 371, at 109 (1979). See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 454 (1985); *Surrey* v. *Lumbermens*

---

[2]At the same time the plaintiff filed a negligence claim against the executor of her husband's will. This claim was later dismissed and is not involved in the appeal.

[3]As of January 1, 1989, underinsured motorist coverage is optional. See G. L. c. 175, § 113L, as amended by St. 1988, c. 273, § 46. See also H. Alperin & R. Chase, Consumer Rights and Remedies § 371 (Supp. 1990).

*Mut. Casualty Co.*, 384 Mass. 171, 177 (1981).[4] While it has been remarked that this type of coverage is "limited personal accident insurance chiefly for the benefit of the named insured," *Cardin, supra* at 452, it is clear that the Legislature intended to include members of the insured party's household under this coverage when it passed G. L. c. 175, § 113L. See 1968 Senate Doc. No. 1030, at 6-7; *Johnson* v. *Hanover Ins. Co.*, 400 Mass. 259, 262 n.5 (1987).[5]

The question of the plaintiff's coverage under her son's policy turns on whether she was a member of her son's household at the time of the accident. The policy defined "household member" to include "anyone living with [the insured] who is related by blood, marriage or adoption." The resolution of the question, by application of the facts as found below, is a question of law. See *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976); *Cavanaugh* v. *DiFlumera*, 9 Mass. App. Ct. 396, 397 (1980). We have never defined the term "household member" for these purposes. Because this provision was prescribed by statute, and was thus not controlled by the defendant insurer, "the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). We must determine the fair meaning of this provision as applied to these facts. See *Manning* v. *Fireman's Fund American Ins. Cos.*, 397 Mass. 38, 40 (1986); *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971).

We recognize, as have courts in other jurisdictions, that, because modern society presents an almost infinite variety of possible domestic situations and living arrangements, the

---

[4]Most of the cases that we rely on involve uninsured motorist coverage. While there may be a difference between uninsured and underinsured motorist coverage, see *Cardin, supra* at 454 n.5, the analysis involved in determining whether a person is covered as a "household member" is the same for both types of coverage. See 2 A. Widiss, Uninsured and Underinsured Motorist Insurance § 33.1, at 19-20 (2d ed. 1990).

[5]In 1988, G. L. c. 175, § 113L, was amended to provide that a "resident relative" of an insured may recover under the insured's uninsured motorist coverage. See St. 1988, c. 273, §§ 46, 47.

term "household member" can have no precise or inflexible meaning. See *Bearden* v. *Rucker*, 437 So. 2d 1116, 1120 (La. 1983); *General Motors Acceptance Corp.* v. *Grange Ins. Ass'n*, 38 Wash. App. 6, 10 (1984). See also Annot., Who is "Member" or "Resident" of Same "Family" or "Household," within No-Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy, 96 A.L.R.3d 804 (1979); 8C J. Appleman, Insurance Law and Practice § 5080.35 (1981 & Supp. 1990); 1 A. Widiss, Uninsured and Underinsured Motorist Insurance § 4.7. Analysis of the issue necessarily must proceed on a case-by-case basis with an evaluation and balancing of all relevant factors. See *Earl* v. *Commercial Union Ins. Co.*, 391 So. 2d 934, 937 (La. Ct. App. 1980); *Dairyland Ins. Co.* v. *Auto-Owners Ins. Co.*, 123 Mich. App. 675, 681 (1983).

One factor which the plaintiff urges us to consider was her intention to return with her husband to Brockton and spend six months out of every year in her son's home. She contends that this factor lends great weight to her claim that she was a member of her son's household. In support of her contention, she cites several cases in which courts have weighed a child's intentions to return to his or her parents' home as a factor in determining whether the child is a member of the parents' household for the purposes of coverage under the parents' insurance policy. See, e.g., *Earl, supra* at 936; *Dairyland, supra* at 680-681; *Holyoke Mut. Ins. Co.* v. *Carr*, 130 N.H. 698, 699-700 (1988); *Connolly* v. *Galvin*, 120 N.H. 219, 220 (1980); *Grange Ins. Ass'n., supra* at 10. In all of these cases, however, the child had lived with the parents for a significant period of time before the child left home, and thus had long been an established member of the parents' household. The inquiry was whether the child's absence from the parents' home was intended to be permanent or temporary.

The situation is significantly different in this case. The plaintiff was not returning to a household where she had long been a member. She and her husband only spent roughly four months living in their son's home prior to moving to

Florida, and during this time the apartment in the garage had not yet been built. Before that, they had maintained their own separate household for over forty years in East Boston and Winthrop. Unlike the cases cited above, the plaintiff's claim to membership in her son's household is based almost entirely on future intentions and not on an established arrangement to which she was returning. An intention to become a member of her son's household is not necessarily sufficient to make her an actual member of that household. See *Chapman* v. *Allstate Ins. Co.*, 306 So. 2d 414, 416 (La. Ct. App. 1975). See also *Waller* v. *Rocky Mountain Fire & Casualty Co.*, 272 Or. 69, 75 (1975). This is particularly so when such intentions would not be ascertainable by the defendant. "Insurers should be able to calculate their risks. Knowledge of the approximate number of persons covered by the policies they issue may be crucial in such calculations, and therefore the persons for whom they are responsible should be readily identifiable." *Workman* v. *Detroit Automobile Inter-Insurance Exch.*, 404 Mich. 477, 517-518 (1979) (Levin, J., concurring in part and dissenting in part).

We agree with the plaintiff's contention that it is possible, in some circumstances, to have a residence in more than one place at the same time. See *Sutherland* v. *Glens Falls Ins. Co.*, 493 So.2d 87 (Fla. Dist. Ct. App. 1986); *Manuel* v. *American Employers Ins. Co.*, 228 So. 2d 321, 322 (La. Ct. App. 1969). In this case, however, we agree with the judge that, at the time of the accident, the plaintiff did not, as she contends, have two residences — one in Winter Haven and one in Brockton — but only one residence in Winter Haven.

The plaintiff and her husband did not receive any mail at their son's home in Brockton, but instead received all of their mail in Winter Haven and at their daughter's home in East Boston. See *Workman, supra* at 497; *Dairyland, supra* at 682. The plaintiff's husband obtained a Florida driver's license and registered their car in Florida, see *Sembric* v. *Allstate Ins. Co.*, 434 So. 2d 963, 964 (Fla. Dist. Ct. App. 1983); *Dairyland, supra* at 682, although the weight of this

factor is somewhat diminished by the fact that they were required to do so in order to purchase the mobile home. See *Scott* v. *Glenn*, 408 So. 2d 1167, 1169 (La. Ct. App. 1981). In addition, following the accident, the plaintiff did not go to her son's home in Brockton, but went instead to a daughter's home in Winthrop to convalesce before returning to Winter Haven. See *Earl, supra* at 938; *Box* v. *Doe*, 221 So. 2d 666, 670 (La. Ct. App. 1969). She never went to her son's home to live after the accident.

Finally, the plaintiff and her husband did not depend on their son for financial support. Economic dependence is of significance when considering an issue like the present one. It is normally to be expected that, when one member of a family provides financially for other members of the family, that person will also provide insurance coverage for those other members of the family. See *Earl, supra* at 937-938 (presumption of coverage for minors under their parents' policy). See also *Davenport* v. *Aetna Casualty & Sur. Co.*, 144 Ga. App. 474, 476 (1978). This expectation is weakened in the case of relatives who are financially autonomous, see *Cotton States Mut. Ins. Co.* v. *McEachern*, 135 Ga. App. 628, 631 (1975); *Hamilton* v. *State Farm Mut. Auto. Ins. Co.*, 364 So. 2d 215, 218 (La. Ct. App. 1979); *Dairyland, supra* at 682; see also *Donegal Mut. Ins. Co.* v. *State Farm Mut. Auto. Ins. Co.*, 377 Pa. Super. 171, 179 (1988), and is further weakened when it involves relatives for whom there is no legal responsibility to provide. See, e.g., *Griffin* v. *General Guar. Ins. Co.*, 254 So. 2d 574 (Fla. Dist. Ct. App. 1971) (uncle); *Mun Quon Kok* v. *Pacific Ins. Co.*, 51 Haw. 470 (1969) (father); *Yarbert* v. *Industrial Fire & Casualty Ins. Co.*, 56 Ill. App. 3d 1034 (1978) (mother); *Old Reliable Ins. Co.* v. *Brown*, 558 S.W.2d 190 (Ky. Ct. App. 1977) (father); *Pederson* v. *All Nation Ins. Co.*, 294 N.W.2d 693 (Minn. 1980) (third cousin).

The facts relied upon by the plaintiff, such as the presence of some belongings in her son's home and her subjective intent, are outweighed by the facts discussed above. We con-

clude that the plaintiff was not a member of her son's household for the purposes of underinsured motorist coverage.

It necessarily follows from this conclusion that the defendant did not engage in unfair claim settlement practices under G. L. c. 176D, § 3 (9) (*b*), (*d*), (*f*) (1988 ed.), so as to have violated G. L. c. 93A. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 15 (1989); *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 677-678 (1983).

*Judgment affirmed.*