Donovan, J.
This case was submitted to the jury on the plaintiff, John Hancock Property and Casualty Insurance Company’s (John Hancock), claims against the insured defendant, David H. Scannell (Scannell Sr.), alleging misrepresentation, breach of contract and fraud together with the counterclaim[1] of violation of G.L.c. 93A and c. 176D in resolving a claim under an automobile insurance policy. The jury determined that David H. Scannell misrepresented the principal place of garaging the motor vehicle when he applied for insurance, breached the insurance policy by failing to cooperate with the insurer during the investigation of the claim and submitted false information with the intent to defraud the plaintiff in order to obtain uninsured motorists benefits, personal injury protection benefits and medical payments. The jury awarded Thirty Thousand Three Hundred and One Dollars ($30,301) in damages.
The counterclaim was submitted to the jury which found the plaintiff in violation of G.L.c. 93A and the violation was knowingly or willfully committed. The plaintiff filed a motion pursuant to Mass.R.Civ.P. 50(b) for judgment notwithstanding the verdict. The defendants move to report the case.
For the following reasons the motion for judgment notwithstanding the verdict is allowed, the motion to report is denied and judgment shall enter declaring the rights and obligations of each party and the damages as found by the jury.

BACKGROUND

The jury was presented evidence of the following.
On June 25, 1996, while Scannell Jr.,[2] an adult, operated his bicycle, he was struck by an uninsured driver. Scannell Jr. is the son of Scannell Sr., who is insured by John Hancock. After the accident, Scannell Sr. submitted claims to John Hancock under P.I.P (personal injury protection), medical pay and uninsured motorist provisions of Scannell Sr.’s automobile insurance policy. John Hancock paid $8,000 on the P.I.P. and $25,000 under the medical pay on the representation by Scannell Sr. that Scannell Jr. was a member of his household. Scannell Sr. had uninsured coverage of $250,000 for which he filed a claim.
While investigating the claim, John Hancock noted a difference between Scannell Sr.’s residence and principal place of garaging.
In 1992, Scannell Sr. lived with his wife at the their marital home at 210 Pleasant Street in Weymouth. In November of 1992, the Probate Court ordered Scannell Sr. to vacate the 210 Pleasant Street home. After the order, Scannell Sr. applied for and received emergency housing at a federally subsidized complex in Quincy. His request for emergency housing was premised on his marital problems. Scannell Sr. lived in Quincyfrom 1992 until 1995.
In September of 1995, Scannell Sr. signed and submitted an application for insurance to John Hancock which listed his residential address as 540 Hancock Street, Suite 530 in Quincy, but the principal place of garaging of his vehicle at 210 Pleasant St., Weymouth. Scannell Sr. was the only operator listed on the policy. The premium based on Weymouth as the principal place of garaging was $1,190.
In November of 1995, Scannell Sr. again applied for emergency housing. Scannell Sr. received housing in Charlestown where he lived from 1995 until his death in 2001. Scannell Sr. paid $75 a month to park his insured vehicle at the Charlestown residence. The premium for garaging his vehicle for three months in Quincy and nine months in Charlestown would have been $1,810.
The family suggests Scannell Sr. rented the Quincy and Charlestown apartments for medical purposes.[3] However, the relevant records indicate that at the time of the accident Scannell Sr.’s cancer had been in remission for several years. The records further show that Scannell Sr. was separated from his wife. She filed an affidavit in the Probate Court case claiming Scannell Sr. did not live with her since 1992, he did not contribute to the support of the family, and he received only social security. There is no evidence that Scannell Sr. provided financial support to Scannell Jr. between 1992 and 1997. Scannell Jr. did not live with his father during this time period.
The Scannells assert that although Scannell Sr. was forced to vacate the marital home due to excessive drinking,[4] he never relinquished the Weymouth home as the center of his domestic and social life. Testimony which the jury did not accept as credible from the Scannell family[5] revealed that Scannell Sr. regularly stayed at the Weymouth home where he interacted *560 with and cared for his grandchildren. The house at 210 Pleasant was owned by Scannell Sr. and his wife. The tax bills and phone bill[6] remained in Scannell Sr.’s name. Scannell Sr.’s license and car registration contained the Weymouth address. He also had the oil changed at a Weymouth gas station.
In May 1996 Scannell Sr. filed a claim for a motor vehicle accident where he listed his residential address as 540 Hancock Street when in fact it was Charles-town. On July 16, 1996, after his son’s accident, Scannell Sr. submitted to his insurance agent a backdated change of address form indicating he lived at 210 Pleasant St., Weymouth as of June 25th.
John Hancock assigned the case to an investigator because of the discrepancies. The Registry of Motor Vehicles had Weymouth as the address for Scannel Sr.’s license and registration. The records at Boston City Hall for 1995 and 1996 record him as residing in Charlestown. The property managers for both Quincy and Charlestown were contacted regarding his application for housing. The dates of his tenancy and the location of his parking space were obtained from both locations. The records of the Probate Court were obtained from the separation action.
The insurer requested a statement under oath which was given in the presence of Scannell’s attorney at which he insisted he lived at the Weymouth address. He did not know where Scannell Jr. worked. He stated his family did not live with him either in Quincy or Charlestown. He refused to sign a release for records including his medical records. The Weymouth Town Hall listed Scannell Sr. as a registered voter for 1993 but not for the years 1994 through 1996. The census cards filed by Mrs. Scannell during 1994 through 1996 did not list Scannell Sr. as a resident of Weymouth. Being a six-year member of the Board of Selectmen she recognized the importance of accurate data. Quincy City Hall listed him as a resident and voter for 1993 through 1995. His insurance agent’s file was inspected for the policy change notice. It bore a different date than the one proffered by Scannell Sr. The agent was shown the difference and stated Scannell wanted the date consistent with the accident. The agent was unaware that he resided in Quincy and Charlestown. The agent refused to give a recorded statement. As a result of the investigation John Hancock decided to file a complaint for declaratory relief.
During the course of litigation, records were obtained from the Quincy Housing. No spouse is listed by Scannell Sr. on the application form. He also indicated he did not own a home. On his application he was listed as the only occupant.
His application for housing in Charlestown contains a statement Scannell was homeless and living on his nephew’s couch in West Roxbury. He left blank the question regarding home ownership. The bank records from Weymouth Savings contained a cancelled check dated July 15, 1996 to his insurance agent and the Quincy address is crossed out and the Weymouth address is written in. None of the other checks in the batch had the address altered.
The hospital records were subpoenaed as a result of the litigation. Beginning in December 1992 the Brigham and Williams Hospital records indicate Scannell Sr. was legally separated and living in Quincy. One note indicates he was not welcomed at home. The VA records indicate he was divorced and living with a friend. An entry on May 17, 1996 contains his Charlestown telephone number.
Scannell Jr. lived in an apartment during the late 1980s and early 1990s. For approximately one year he lived in Quincy near the MBTA with a roommate. On June 5, 1996 Scannell Jr. was removed from the house. His father was not present during this incident.

DISCUSSION

The defendants seek a declaration that (1) Scannell Jr. was a member of Scannell Sr.’s household, (2) the principal place of garaging of Scannell Sr.’s car was 210 Pleasant St., Weymouth and (3) John Hancock breached the insurance contract by failing to pay the uninsured motorist coverage. In the alternative they request the case be reported. John Hancock moves for judgment notwithstanding the verdict on the 93A counterclaim.

A. Household Member Claim

Scannell Sr.’s policy reads: “household member . . . means anyone living in your household who is related to you by blood, marriage or adoption ...” Scannell Jr. never lived with his father either in Quincy or in Charlestown. The defendants contend Scannell Sr.’s household was not Quincy or Charlestown but rather 210 Pleasant St. Weymouth. They rely on Vaiarella v. Hanover Ins. Co., 409 Mass. 523, 576 (1991). John Hancock argues Scannell Sr.’s household was where he lived, Charlestown. The jury concluded Scannell Sr. lied on his application for insurance when he indicated the principal place of garaging was Weymouth. Further the jury decided he submitted false information with the intent to defraud the insurance company in order to obtain benefits for his son when he asserted his household was Weymouth.
The thrust of the defendant’s argument is that the term “household member” should be interpreted in an expansive way because of the different living arrangements and Scannell Jr. should not be penalized because of any wrongdoing found by the jury regarding the actions of Scannell Sr. The defendants claim that Scannell Sr. did laundry in Weymouth, slept there occasionally, received his social security check there, had his car serviced in Weymouth and babysat the grandchildren. These facts they allege support their contention Weymouth was his household, his residence. The jury did not accept this evidence as credible.
*561 The specific issue of whether a family member was “living in” the named insured’s “household” so as to qualify for uninsured motorists-’ coverage is a question of law, only where the underlying facts and circumstances of the insurance claim are uncontroverted or have been judicially determined. Vaiarella v. Hanover Ins. Co., 409 Mass. 523, 526 (1991). Here there was a controversy as to whether Scannell Sr.’s household was 210 Pleasant St., Weymouth or Charlestown. It is uncontroverted that Scannell Jr. lived in Weymouth but was this his father’s household? The jury concluded it was not. That controverted issue has been resolved. Therefore in applying the policy to the facts since Scannell Sr.’s household was not Weymouth and there was no evidence that Scannell Jr. lived in Charlestown then Scannell Jr. was not a household member.
The défendants argue there is no bright line test for the determination of a claimant’s status as a household member. That is accurate. However as the Court stated: “[Bjecause modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term ‘household member’ can have no precise or inflexible meaning.” [Citations omitted.] Analysis of the issue necessarily must proceed on a case-by-case basis with an evaluation of all relevant factors. Id. at 526-27.
In this Commonwealth as well as in other states, “the predominant relevant factors to be considered in resolving this issue include the nature of the claimant’s relationship to the named insured, the individual’s physical presence in or absence from the named insured’s dwelling place, the degree of the individual’s economic dependence upon the named insured, and the intention of the named insured and the claimant with respect to the permanence of the latter’s living arrangements. See Annot., Who is a ’’Member" or “Resident” of Same “Family” or “Household,” Within No-Fault or Uninsured Motorist Provisions of Motor Vehicle Insurance Policy, 96 A.L.R.3d 804, 807 (1979)." Gianely v. Travelers Ins. Companies, 1995 Mass.App.Div. 155 (1995) (insured lived in Andover and son returned to insured’s house after a fire in his apartment).
The jury was presented with evidence of each factor. They concluded that Weymouth was not Scannell Sr.’s household. The unrebutted evidence was that Scannell Sr. did not contribute financial support to his son nor was the son economically dependant on his father.
Notwithstanding the family’s attempt to change the nature of Scannell Sr.’s relationship, at no time did Mrs. Scannell ever return to Probate Court to vacate the removal order. In fact, she was aware of his continuous drinking and from as early as 1977 warned him to stop drinking or leave. If one were to believe that Scannell Sr. intended to stop drinking and return to the marital home, that would be insufficient to establish at the time of the accident the marital home was his household and where he resided.
The instant case is closest factually to Griffith v. Security Insurance Company of Hartford, 167 Conn. 450, 356 A.2d 94 (1975), where the home address of the injured son was different from the home address of his father, the insured who was divorced for four years from the mother. The issue was whether the son was a resident of the same household of the insured. The Court held he was not living in his father’s household even though the father supported the son, took him on trips, visited them frequently, babysat the children at his ex-wife’s house, kept clothes and a razor there, and had meals with his children three to seven times a week.
Here Scannell Sr. paid $75 per month to garage his car in Charlestown from the time he moved there. When he filed a claim for his motor vehicle accident in May 1996 Scannell Sr. listed his residence as Quincy not Weymouth. The records at Boston City Hall list-him as a resident of Charlestown for 1995 and 1996. Mrs. Scannell did not include him in the Town of Weymouth census for 1994 through 1996. He was not listed as a voter in Weymouth after 1993. He was listed as a resident of Quincy from 1993 through 1995. His application for housing in Charlestown indicates he was homeless and living on his nephew’s couch in West Roxbury. His checks from his checking account bore the Quincy address. The hospital records from Brigham and Womens list Quincy as his residence. An entry in the VA records as late as May 17, 1996 contains his Charlestown telephone number.
In consideration of all the factors set forth above, the only conclusion is that Weymouth was not where Scannell Sr. lived and therefore it was not his household. It follows that his household was in Charlestown at the time of his son’s accident and the son did not live there. Scannell Jr. was not a member of his father’s household.

B. Innocent Claim Issue

The jury determined Scannell Sr. misrepresesnted the principal place of garaging his motor vehicle and gave false information with the intent to defraud the insurance company in order to obtain benefits for his injured son. The insurance policy contains the following provision regarding “false information.” “If you or someone on your behalf gives us false, deceptive, misleading or incomplete information in any application and if such false, deceptive, misleading or incomplete information increases our risk of loss, we may refuse to pay claims under any or all of the Optional Insurance Parts of this policy. Such information includes the description and the place of garaging of the vehicle ...”
Even if one could argue that Scannell Sr.’s failure to change his principal place of garaging his vehicle as he moved to Quincy and then Charlestown, was not *562 with the intent to deceive,[7] the issue is whether it was a material misrepresentation. A material fact is one which would naturally influence the judgment of the underwriter in estimating the degree of risk and the setting of the appropriate premium. Hanover Insurance Company v. Leeds, 42 Mass.App.Ct. 54, 57 (1997). The evidence was undisputed that the premium for insurance in Weymouth was significantly less than what Scannell would have been charged if he informed the insurer of his change of address. His misrepresentation of the place of garaging was a material breach of the contract. John Hancock had an absolute right to refuse to pay the claim under the optional insurance provision of the policy.
Scannell Jr. asserts he is innocent of any wrongdoing which is a correct statement. However, “where the obligation which a plaintiff seeks to reach arises out of noncompulsory insurance . .. any defence available to the insurer against the insured is also available against the plaintiff, for the plaintiff stands in the shoes of the insured." Foshee v. Insurance Company of North America, 359 Mass. 471, 472 (1971). Here not only did Scannell Sr. violate the “false information” clause of the contract but he also failed to cooperate with the insurer. As a result the insurer may avail itself of the right to refuse to pay Scannell Jr. optional insurance parts of the policy as a result of his father filing false information.
C. 93A Claim
The jury verdict that John Hancock engaged knowingly or willfully in an unfair business practice in the investigation and settlement of this case cannot stand. The insurer is under an affirmative duty to investigate, efficiently and effectively, claims submitted for coverage. Here the insurer paid $8,000 on the P.I.P. and $25,000 under the medical pay on the representation by Scannell Sr. that Scannell Jr. was a member of his household. After gathering as much evidence as possible without the cooperation of the insured, it was not reasonably clear that there was coverage based on the issue of household member. The prudent course of conduct was to seek a declaration of the rights of the parties. John Hancock sought the declaration by filing this litigation.
There was no violation of the insurer’s duties and obligations pursuant to G.L.c. 176D and c. 93A.

ORDER

It is hereby ORDERED that the motion for judgment notwithstanding the verdict is allowed, the motion to report is denied and judgment shall enter declaring the rights and obligations of each party and the damages as found by the jury.

 The counterclaim for deceit was waived before trial. The counterclaim was reserved by the court along with the declaratory judgment.

 There is no question the injuries were catastrophic.

 Scannell Sr. frequently went to the hospital for cancer treatment.

 When Mrs. Scannell filed for divorce which she did not pursue, Scannell Sr. was required to vacate the marital home.

 Mrs. Scannell testified she owned a dress shop which was opened seven days per week from 9:00 a.m. until 9:00 p.m. She was present during business hours until she closed the shop in March 1997.

 The phone bill for the Charlestown apartment went to the Charlestown address.

 Clearly the evidence warrants as the jury did a conclusion he intended to deceive.