## Metropolitan Property and Casualty Insurance Company *vs.* Michael A. Morel & others.[1]

No. 02-P-1165.

Middlesex. December 10, 2003. - January 29, 2004.

Present: Gelinas, Kaplan, & Cohen, JJ.

*Insurance,* Motor vehicle insurance, Liability insurance. *Words,* "Insured," "Household member."

A Superior Court judge properly granted summary judgment to defendants in a declaratory judgment action, ruling that a personal excess liability insurance policy issued by the plaintiff insurance company provided coverage for injuries two defendants sustained in an automobile accident that killed their son, the driver, where the term "insured" as defined in an amendatory endorsement in the father's insurance policy extended to the son as a relative residing in the father's household, despite the fact that, prior to the accident, the father and wife had separated, and the father lived at a different address from the one he had lived at with his wife and son, because the father remained actively involved with his family members still living at his previous address. [381-385]

Civil action commenced in the Superior Court Department on December 28, 2000.

The case was heard by *Christine M. McEvoy*, J., on motions for summary judgment.

*John P. Graceffa* for the plaintiff.

*Edmund P. Daley* for Kalie Martell.

*Paul M. Moretti* for Harold E. Carter.

Cohen, J. In this declaratory judgment action, a Superior Court judge granted summary judgment to the defendants, ruling that a personal excess liability insurance policy (excess policy) issued by the plaintiff insurance company (Metropolitan) to Michael A. Morel, Sr. (Morel), provides coverage for injuries sustained by defendants Harold E. Carter and Kalie Martell in

[1]Estate of Michael A. Morel, Jr., Harold E. Carter, and Kalie Martell.

an automobile accident on September 13, 2000. Carter and Martell were passengers in a Ford Taurus vehicle owned by Morel and driven, with his permission, by his adult son, Michael A. Morel, Jr. (Michael). Michael died as a result of the accident, and Carter and Martell have asserted claims against his estate.

At issue is the meaning of an amendatory endorsement contained in the excess policy, which states that the term " 'insured' means you [i.e., the named insured, in this case Morel] or a relative residing in your household."[2] The principal question put to the motion judge and presented for our review is whether, at the time of the accident, Michael resided in his father's "household" even though Morel lived apart from the family home occupied by his wife and sons. The motion judge decided that the undisputed facts compelled the conclusion that Morel's "household" extended to the family home where Michael resided. We affirm.

The summary judgment record establishes the following relevant facts. Beginning in 1992, Morel purchased and renewed both primary and excess insurance from Metropolitan covering his home at 72 Cottage Street, Hudson, and various family automobiles. In 1996, Morel and his wife separated. Although Morel thereafter rented his own single family house in Hubbardston, the couple chose not to divorce, and Morel remained an active presence at 72 Cottage Street. He retained his joint ownership interest in the property, filed joint tax returns with his wife using the 72 Cottage Street address in the filings, kept his own set of keys to the house, and visited several times a week. He received mail (including his mail from Metropolitan) at the Cottage Street address, took the family trash to the dump each week, kept a workbench and tools in the basement, and did maintenance and remodeling on the house. Throughout his separation from his wife, it was Morel's intent to keep the excess policy in force to protect not only his Cottage Street

---

[2]Originally, the definition of "insured" read: "[Y]ou or a relative residing in your household, or any person using, with your permission, an automobile, pleasure vehicle or boat you own or rent or that has been loaned to you, provided it is not furnished for their regular use." The defendants contend that the original language should control because Metropolitan failed to properly inform Morel of the amendment. Because we affirm on other grounds, we need not reach this issue.

property but also his wife and other family members residing there.

Michael never lived with his father in Hubbardston. Beginning in 1994, while he was still in high school, Michael intermittently lived on his own, with friends, or with his grandmother; but by December, 1999, he had moved back to Cottage Street to live with his mother, and there he resided until his death. Michael had held a few different jobs since graduating from high school and was employed as an automobile mechanic at the time of the accident. However, he did not pay rent or contribute to household expenses and had to borrow a car from his father[3] in order to commute to work, when his own truck was repossessed.

In June, 2000, Metropolitan renewed the excess policy, issuing it to Morel as named insured, and listing the Cottage Street address on the declarations page. The excess policy identified three underlying primary policies also issued by Metropolitan: a homeowner's policy insuring the dwelling at 72 Cottage Street; an automobile policy insuring two vehicles owned by Morel (the Ford Taurus involved in the accident and a Chevrolet Geo)[4]; and a second automobile policy insuring a Saturn belonging to Morel's wife. The premium charged by Metropolitan for the excess policy was computed using a Middlesex County base rate applicable to the 72 Cottage Street address. This rate was higher than the Worcester County rate that would have applied to an address in Hubbardston.

Even though Morel's undisputed intent was to obtain excess coverage for the property and automobiles used by his family at 72 Cottage Street, and even though the premium was computed on that assumption, Metropolitan claims that once Morel separated from his wife, the excess policy insured only the "household" that Morel, the named insured, maintained in Hubbardston. Metropolitan's premise is that the term "house-

---

[3]This was not the car involved in the accident.

[4]Initially Metropolitan also contested the existence of coverage under the primary automobile policy insuring the Taurus. That position has been abandoned. The only live issue is whether the excess policy provides additional coverage for the liability claims of Carter and Martell against Michael's estate.

hold" unambiguously refers only to persons who live under the same roof, and, therefore, once Morel established his own residence, coverage was limited to Morel and any relatives who might live with him there. Since Michael did not reside with Morel in Hubbardston, Metropolitan contends that he was not a relative residing in the named insured's household and, accordingly, was not an "insured" under the definition contained in the amendatory endorsement.[5]

The fundamental problem with Metropolitan's argument is that its premise is inconsistent with decided Massachusetts law. In construing the extent of underinsured motorist coverage under a standard automobile policy, the Supreme Judicial Court has held that because "modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term 'household member' can have no precise or inflexible meaning." *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 526-527 (1991). Consequently, determining whether someone is a member of a "household" must "proceed on a case-by-case basis with an evaluation and balancing of all relevant factors." *Id.* at 527. The inquiry, therefore, is far more subtle than the mechanical approach advocated by Metropolitan, particularly since, as the *Vaiarella* court noted, it is possible, in some circumstances, to have a residence in more than one place at the same time.[6] *Id.* at 528.

Metropolitan would have us distinguish *Vaiarella* and use the

[5]Metropolitan places much emphasis on a statement made by Morel in his deposition that he did not consider Michael to be "a member of my immediate household [in Hubbardston]." In view of the qualifying word, "immediate," this statement is not the dispositive concession that Metropolitan makes it out to be. In any event, Morel's testimony is not determinative of the legal question presented. See *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982) (the interpretation of an insurance policy is a question of law for the court).

[6]Curiously, the complaint alleges facts that squarely defeat the claim even on Metropolitan's own terms. Paragraph 3 of the complaint recites that Morel "resides at 72 Cottage Street, Hudson . . . ." Paragraph 13 alleges, albeit on information and belief, that Michael "was a household member in the household of [Morel] on September 13, 2000." Thus, at the inception of the case, when other coverage issues remained in play, Metropolitan took the position that Morel and Michael lived under the same roof at the Cottage Street address. There is no indication that Metropolitan ever sought to amend

"under the same roof" test here, because *Vaiarella* construed language in a standard Massachusetts automobile policy rather than an excess policy. We see no reason, however, why the reasoning of *Vaiarella* is not relevant here. If anything, Morel is entitled to a more generous construction of the terms of the excess policy, since Metropolitan had the ability, lacking in the automobile insurance context, to draft the policy so that the term "household" had but one clearly defined meaning. Compare *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280-281 (1997) (ambiguous policy language of policy is construed against the insurer that drafted it), with *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994) (ambiguous language in standard automobile policy, which is controlled by insurance commissioner, is not construed against insurer). See *Vickodil* v. *Lexington Ins. Co.*, 412 Mass. 132, 135 (1992) (unless policy language is required by law, ambiguities are resolved against insurer).

In any event, the pragmatic balancing approach adopted in *Vaiarella* suffices to establish coverage in this case. Among the nonexclusive factors mentioned in *Vaiarella* are whether the putative member of the household has an established connection to it; whether he receives mail at that address; whether he keeps possessions there; and whether his relationship to other household members involves financial support.[7] *Vaiarella* v. *Hanover Ins. Co.*, *supra* at 527-529. Here, after the marital separation, Morel remained actively involved with his family at 72 Cottage Street. He frequently was present there, he received mail at that address, and he regularly performed significant household tasks there. He retained significant financial

these assertions as the case evolved.

A party is bound by the allegations in its pleadings. G. L. c. 231, § 87. Nevertheless, because the defendants have not raised the point, and the parties have not briefed it, we do not decide the case on this basis.

[7]In *Vaiarella*, it was held that, on balance, the insured's mother was not a member of his household for purposes of coverage under his automobile policy, because she had stayed in his home only briefly, as an interim measure before moving from her own home to Florida; she did not receive any mail there; she did not return there after her accident; and she did not depend upon her son for financial support. The court held that these considerations outweighed the facts that she kept some belongings in her son's home and had planned, at the time of the Florida move, to reside with him in the future for six months of the year. *Vaiarella* v. *Hanover Ins. Co.*, *supra* at 527-530.

responsibility for his wife and sons: they lived in a dwelling of which he was co-owner, and he continued to purchase insurance for their benefit. Furthermore, the excess policy by its terms was designed to augment the coverage of an underlying home-owner's policy issued for the Cottage Street home and, inter alia, an underlying automobile policy insuring a car belonging to his wife and kept at that address. Consistent with that purpose, Metropolitan charged a premium that was predicated upon the 72 Cottage Street location. On these facts, it would defy both common sense and the manifest intent of the parties to accept Metropolitan's view that the excess policy pertained only to a "household" in Hubbardston.

Because Morel's household included his home and family at 72 Cottage Street, the only remaining inquiry is whether, at the time of the accident, Michael was a relative residing there. Unquestionably, he was, since that was where he had lived, received mail, and kept his belongings since December, 1999.

Metropolitan's contention that Michael should not be considered a resident of 72 Cottage Street because he was an emancipated adult requires little comment if only because the amendatory endorsement in question contains no age or dependency restriction. But even if dependency were relevant to deciding whether Michael was a relative residing in Morel's household,[8] Morel's uncontradicted deposition testimony and affidavit establish that Michael was not financially autonomous. Although Michael was employed at an automobile repair shop, he did not pay rent or contribute to household expenses while living at 72 Cottage Street. Indeed, his financial straits were such that his own motor vehicle had been repossessed, making it necessary for him to fall back on the generosity of his father in order to have transportation to work.

---

[8] As *Vaiarella* indicates, dependency can be a significant factor in determining whether an individual, such as an adult child living away from his family's home, nevertheless remains a member of the "household" that he left. *Vaiarella* v. *Hanover Ins. Co.*, *supra* at 529. In this case, however, we are presented with the converse situation: it was the adult child who remained in the family home, and it was the named insured who established a residence elsewhere. Thus, the salient question is not whether Michael was sufficiently dependent to remain a member of the Morel household; it is whether Morel, having established a residence elsewhere, nevertheless retained responsibility, financial and otherwise, for the home and family from which he was separated.

In conclusion, Michael was an "insured" under the excess policy, and his estate is entitled to its protection.

*Judgment affirmed.*