Fremont-Smith, Thayer, J.
This case concerns whether insurance coverage was provided by Cambridge Mutual Fire Insurance Company (“Cambridge Mutual”) under a homeowners policy issued to Louis and Mary Gonda for injuries suffered by a Somerville police officer, Michael Kiely, as a result of the alleged negligence of the Gondas’ son-in-law, Phillip Pare, during a 2004 fire in the Somerville home of the Gondas. In a consolidated case[1] Kiely has sued Pare for his injuries.
In this case, Cambridge Mutual seeks a declaration that there is no policy coverage because Pare was not an “insured” under the policy.
Based on all of the credible evidence at the trial, the Court finds and rules as follows.
Under Section II of the Gonda Policy, “insured” is defined as “you [the Gondas] and residents of your household who are: (a) your relatives . . .” Cambridge Mutual concedes that Philip Pare, who was the Gondas’ son-in-law, was the Gondas’ relative, but contends that Pare was not an insured under the Gondas’ homeowner’s policy because he was not a resident of the Gondas’ household at the time of Pare’s alleged tort, so that, as a result, Cambridge Mutual has no duly to defend or indemnify Pare under the policy for the tort claims asserted against him by Kiely.
Kiely, to the contrary, contends that the Court should declare as a matter of law that there is coverage based on the unambiguous language of the policy, and considering what “an objectively reasonable insured, reading the relevant policy language, would expect to be covered,” City Fuel Corp. v. National Fire Ins. Co. of Hartford, 446 Mass. 638, 643 (2006), quoting Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 282 (1997). Kiely points out that the policy, while noting that it is a “2 family,” insured the entire home, identifying the insured location as simply “78 North Street, Somerville, MA.” The policy, moreover, specifically included a two-family home in the definition of “residence premises,” as follows"
“Residence premises” also means a two-family dwelling where you reside in at least one of the family units and which is shown as the “residence premises” in the Declarations.
Kiely argues that the policy language is also significant for what it does not say. It does not say that the “residence premises” consists only of the particular unit in which the named insured resides. Moreover, the policy lists 17 different exclusions from liability coverage, but contains no exclusion of liability coverage for family members living in a unit other than the unit in which the named insured lives.
In short, Kiely urges that, since the policy insures both units of a two-family home, and since the policy provides liability coverage for “residents of your household who are . . . your relatives,” an objectively reasonable insured would conclude that there is liability coverage for all relatives in the home of the named insured regardless of which unit they reside in.
In further support of this argument, Kiely also points out that, because the terms of a homeowner’s insurance policy are not prescribed by statute (unlike a Massachusetts automobile policy), any ambiguities in the policy are to be construed against the insurer. Metropolitan Prop. and Cas. Ins. Co. v. Morel 60 Mass.App.Ct. 379, 383 (2004). Thus, where there are two different interpretations of policy language, both of which are plausible, a court should adopt the interpretation that results in a finding of coverage under the policy:
We are not persuaded that the policy language here unequivocally supports the interpretation of either party; both interpretations are at least plausible. Where, as here, there is more than one rational interpretation of policy language, “the insured is entitled to the benefit of the one that is more favorable to it.”
Hakim, 424 Mass. at 281.
In spite of Kiely’s compelling arguments, however, this Court will refrain from deciding the meaning of “insured” as used in the policy as a matter of law, as the Supreme Judicial Court has determined that, whether a person is a “member of a household,” is a complex decision requiring a case-by-case evaluation and a balancing of all relevant factors. Vaiarella v. Hanover Ins. Co., 409 Mass. 523, 527 (1991). No one factor has been viewed as dispositive, but the courts have consistently acknowledged that “because modem society presents an almost infinite variety of possible domestic situations and living arrangements, the term ‘household member’ can have no precise or inflexible meaning.” Vaiarella, 409 Mass. at 526-27.
*306 Similarly, the Appeals Court in Metropolitan Prop. and Cas. Ins. Co., 60 Mass.App.Ct. 379 (2004), held that a father and his adult son were members of the same household, even though it was undisputed that the two of them did not reside in the same house or even live in the same town. The Court found that other factors, including the father’s ownership of the property and financial support of the house where his son lived, and the father’s continuous involvement in upkeep and management of the house, outweighed the fact that the father did not live there because he was separated from his wife. 60 Mass.App.Ct. at 383-84. The Court went on to describe the manner of deciding who is a household member as a “pragmatic balancing approach” and summarized the factors considered in Vaiarella as follows:
Among the nonexclusive factors mentioned in Vaiarella are whether the putative member of the household has an established connection to it; whether he receives mail at that address; whether he keeps possessions there; and whether his relationship to other household members involves financial support.
Id. In Gianely v. Travelers Ins. Co., 1995 WL 684105, at *2 (Mass.App.Div. Nov. 13, 1995), the Court, described the relevant factors as follows: “While the ‘relevant factors’ employed by courts in this Commonwealth as well as in other states seem as endlessly varied as the fact patterns of the cases in which they are applied, the predominant considerations include the nature of the claimant’s relationship to the named insured, the individual’s physical presence in or absence from the named insured’s dwelling place, the degree of the individual’s economic dependence upon the named insured, and the intention of the named insured and the claimant with respect to the permanence of the latter’s living arrangements.”
The Court affirmed the Superior Court’s denial of coverage for the son on summary judgment because there was insufficient evidence that the son intended to reside there permanently. Id. at 4-5.
Plaintiff points out that neither Pare nor the Gondas believed that the insurance policy provided coverage to Pare, and argues that Pare is bound by his admission in that respect. But neither Pare nor the Gondas are qualified to render an opinion as to the meaning of “insured” in the policy. Indeed, this is admitted by plaintiff elsewhere in its Supplemental Trial Memorandum, which states (at 3) “the question whether the individual is an insured under the policy, is a question of law for this Court — This is a question of contract interpretation.” Plaintiff also concedes, while an objective insured’s reasonable expectation as to insured coverage would be relevant, “an insured’s expectations or beliefs do not determine coverage . . .” Id.
It might also be added that neither Pare nor the Gondas were “objective, reasonable insureds.” The Gondas admitted that a Cambridge'Mutual representative had contacted them and indicated to them that they would be personally liable if the policy provided coverage for Pare’s personal injury claim. Mr. Gonda testified he was told by the insurance agent that Kiely was suing him personally for $1,000,000 and that Kiely’s suit was “a claim against his home,” and he feared he would lose his insurance coverage if the insurance company had to pay Kiely “alot of money.”
The Gondas had also obtained c. 209A restraining orders against Pare after Pare and their daughter divorced.
It may also be noted that, in their application for protection under c. 209A, both Gondas indicated that they and Pare were members of the same household, which was also admitted by Mrs. Gonda at her deposition.
While the house had long been used as a two-family residence and had therefore been equipped with separate utility meters and with separate outside entrance doors, the Court finds that the Gondas (who lived upstairs) and the Pares (who lived downstairs) each had almost unfettered access to the other’s living quarters and were free to come and go anywhere in the house. They each possessed keys to the other’s entrance. They frequently took meals and vacations together and mutually supported one another, both financially and otherwise. Gonda’s daughter Kristin (Pare’s wife), took care of her ailing father, Philip and Kristen did chores for the Gondas, and contributed financially to the Gondas’ household expenses by their payment of rent. The Gondas, on their part, provided care and supervision to Pare’s young child, and contributed financially to their needs both directly and by charging them a “rent” significantly below market. They also provided Philip free of charge with a parking space for his large bucket truck used in his business and provided him with garage space for his welding and other commercial activities on the Gonda property. Indeed, Mrs. Gonda had helped Pare procure the necessary license from the town permitting him to engage in such business activities at the home. Gonda’s daughter (Pare’s wife) also had an “established connection” to the home, having grown up in it, and, after her return to the home after her marriage to Pare, intended it to be their permanent residence. In sum, the Pares were not mere tenants in the Gondas’ house, but the Pares and Gondas operated predominantly as a single household unit.
Based on all of the credible evidence at trial, the Court finds that Kiely has shown, by a preponderance of the evidence, that Pare was a member of the Gonda household and was therefore an insured under the policy at the time of his alleged negligent infliction of injury on Kiely.

ORDER

Accordingly, final judgment shall enter as follows:
*307 1. The Court rules and declares that Philip Pare, at the time of his alleged negligence in the case of Kiely v. Pare, Middlesex Sup.Ct. C.A. No. MICV2005-02990A, was a related resident of Gonda’s household, so that he was an insured person entitled to a defense and policy coverage in that action for his allegedly tortuous conduct.
2. It is ORDERED that Cambridge Mutual Fire Insurance Company shall provide a defense and coverage to Philip Pare in the case of Kiely v. Pare, Middlesex Sup.Ct. C.A. No. MICV2005-02990-A.

 Kiely v. Pare, Middlesex Sup.Ct. C.A. No. MICV2005-02990-A. Pare allegedly resisted his arrest by Kiely when Pare attempted unsuccessfully to re-enter the home to rescue his dog.